**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ANDREW CRISMAN and

RENEE CRISMAN,                                                     Civil No. 24-3188 (JRT/LIB)

Plaintiffs,

**ORDER DENYING DEFENDANTS'**
**MOTION FOR SUMMARY**
v.                                                    **JUDGMENT AND GRANTING**
**PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

CHICAGO TITLE INSURANCE COMPANY,

Defendant.

Erik F. Hansen and Kirk Tisher, **BURNS & HANSEN, P.A.**, 8401 Wayzata Boulevard, Suite 300, Minneapolis, MN 55426; and Joshua D. Christensen, **DUDLEY AND SMITH, P.A.**, 1295 Northland Drive, Suite 250, Mendota Heights, MN 55120, for Plaintiffs.

Kevin P. Kitchen, Timothy M. Kelley, **STINSON LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Defendant.

Plaintiffs Andrew and Renee Crisman acquired 120 acres of real property in Kanabec County, Minnesota in 2013. They also purchased a title insurance policy from Defendant Chicago Title Insurance Company. In relevant part, that policy provides coverage in the event the Crismans did not possess a right of access to and from their property as of the date the policy took effect, October 2, 2013.

The Crismans are now involved in state court litigation concerning the legal status of "Hornet Street," a gravel road which the Crismans argue provides them with the only means of accessing their property from public roads.  The Crismans filed a claim with Chicago Title seeking coverage for costs associated with their state court lawsuit, and Chicago Title denied the claim.  The Crismans sued, alleging that Chicago Title has a duty to defend the Crismans under the title insurance policy, and therefore committed breach of contract in failing to provide coverage for the Crismans' legal costs.  The Crismans now move for partial summary judgment seeking declaratory judgment to that effect.  Chicago Title also seeks summary judgment, arguing that it can prove that the Crismans possessed a legal right of access to the Property as of the date of the policy, and therefore has no duty to defend the Crismans in state court.

Because genuine disputes of material fact remain regarding the Crismans' legal right of access to their property as of October 2, 2013, the Court concludes that Chicago Title is not entitled to summary judgment.  Furthermore, because Chicago Title failed to demonstrate that the state court litigation is outside the scope of protection afforded by the policy, the Court will grant the Crismans' motion for partial summary judgment.

## BACKGROUND

The Crismans purchased 120 acres of real property ("the Property") in Kanabec County, Minnesota in 2013.  (Aff. of Renee Crisman ("Crisman Aff.") ¶¶ 1–3, Oct. 3, 2025, Docket No. 42.)  The Crismans also purchased a title insurance policy ("the Policy") from

Defendant Chicago Title Insurance Company.  (*Id.* ¶ 4.)  As relevant here, Chicago Title

provided the following coverage:

> Chicago Title Insurance Company . . . insures, as of Date of Policy . . . against loss or damage . . . sustained or incurred by the Insured by reason of: . . . No right of access to and from the Land.

(Crisman Aff., Ex. A at 13.)

In the years since they purchased the Property, the Crismans have engaged in multiple rounds of litigation against Hillman Township and other relevant parties to clarify the legal status of "Hornet Street"—a dead-end gravel "road [that] measures two rods wide and runs north one-half mile from County Road 3."  *Crisman v. Hillman Township*, No. A22-0123, 2022 WL 3581816, at *1 (Minn. Ct. App. Aug. 22, 2022).  From the Crismans' perspective, Hornet Street has always been the only way through which the Crismans can access their property from public roads.  The underlying state court cases broadly concern the subject of Hornet Street's ownership and control, and specifically, whether Hillman Township has a legal obligation to maintain Hornet Street.[1]  *See Crisman*, 2022 WL 3581816, at *2.

---

[1] The Court notes that the parties to the underlying state court litigation seem to have had difficulty agreeing to what the case is about.  *See Crisman v. Hillman Township*, No. 33-CV-23-187, Order Continuing Trial (Minn. Dist. Ct. Dec. 16, 2025) (stating that "[a]fter hearing from several witnesses, it became apparent to the parties that there were substantial areas of disagreement about evidentiary matters," and granting a trial continuance).

The Crismans' filings reference Minnesota Court File Nos. 33-CV-20-4; 33-CV-23-187; 33-CV-23-190 as the relevant state court matters. [2] These cases involve the following subjects:

- 33-CV-20-4:   The Crismans sought "a declaratory judgment" including confirmation "that Hornet Street is a township road" and that the "Township bears a statutorily duty . . . to maintain Hornet Street[.]"   (Compl. ¶¶ 31, 40–42, *Crisman et al. v. Hillman Twp, Minn.*, No. 33-CV-20-4 (Minn. Dist. Ct. Jan. 3, 2020).)  This case is now closed.

- 33-CV-23-187:  The Crismans sought "declaratory judgment" that "Hornet Street is a township road," that the "Hillman Town Board erroneously signed the '40-Yr Resolution' attempting to void its interest in Hornet Street based upon false statements and assumptions," and that "the Township has maintained Hornet Street within the last forty (40) years[.]"  (Petition at ¶¶ 32–33, 40, *Crisman et al. v. Hillman Twp.*, No. 33-CV-23-187 (Minn. Dist. Ct. Aug. 24, 2023.)

- 33-CV-23-190:  The Crismans sought injunctive relief including an order enjoining the relocation of a bus stop near the Crismans' home, arguing if relocated, the school district would be "fail[ing] to provide a bus stop location that [ensures] the health, safety and welfare of the Crisman children."  (Compl. ¶ 30), *Crisman v. Ind. Pub. Sch. Dist. No. 332*, No. 33-CV-23-190 (Minn. Dist. Ct. Aug. 31, 2023).)  The Crismans also sought "an Order enjoining . . . Defendants . . . from making any threats, engaging in any harassing behaviors as it relates to Plaintiffs or Hornet Street, or making any statements that they are the sole owners of Hornet Street and thus, no other members of the public may drive down Hornet Street."  (*Id.* at 8.)  This case is now closed.

---

[2] A federal district court may take judicial notice of public state-court records.  *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

The Crismans filed a title insurance claim with Chicago Title for costs associated with their litigation. Chicago Title denied the claim. (Crisman Aff. ¶ 5, Ex. A at 1–12.) The Crismans requested that Chicago Title reconsider the denial of coverage multiple times, but Chicago Title maintained its position that "the Property enjoyed a legal right of access along [Hornet Street] as of the Date of Policy" and that, therefore, it "is not obligated by the terms of the Policy to take action at this time[.]" (*Id.* at 12.)

On June 25, 2024, the Crismans initiated a state court action against Chicago Title. (*See* Compl., Aug. 9, 2024, Docket No. 1.) The Crismans alleged that "[d]ue to the acts of Hillman Township and others related to the Crismans lack of access to the Property, the Crismans have been involved in several court cases [to] attempt to protect their interest and access to the Property." (*Id.* ¶ 19.) They argued that "[p]ursuant to the terms of the Policy, Chicago Title is liable for the Crismans' costs and expenses in defending their rights under the Policy and to the Property." (Compl. ¶ 24.) The Crismans, alleging that "Chicago Title has inexplicably denied the Crismans' claim and has refused to provide the Crismans with any coverage under the Policy" (*id.* ¶ 26), brought claims for breach of contract and sought declaratory judgment that "the Crismans' claim is covered under the terms of the Policy" (*id.* ¶ 39). Chicago Title removed the case to federal court on August 9, 2024. (*See* Docket No. 1.)

The Crismans seek partial summary judgment, and Chicago Title seeks full summary judgment. (Pls.' Mot. Partial Summ. J., Aug. 29, 2025, Docket No. 20; Def.'s Mot.

Summ. J., Aug. 29, 2025, Docket No. 27.)  The Crismans argue that the Crismans' litigation triggers Chicago Title's duty to defend under the Policy, and seek declaratory judgment to that effect.  Chicago Title contends that as a matter of law, the Crismans possessed a right of access to and from the Property as of October 2, 2013, and that, accordingly, it properly denied the Crismans' insurance claim.  Chicago Title argues that the Crismans possessed a right of access through two different roads—Hornet Street or Hillman Drive (also known as 297th Avenue), a road that abuts the Crisman's property but does not allow them to access their driveway or provide access to the buildings on their property.  (*See* Defs.' Mem. Supp. Summ. J. at 4 (providing a map), Aug. 29, 2025, Docket No. 29.)  Chicago Title argues that because it can prove that the Crismans' right of access was intact when the Policy took effect, it has no obligation to defend the Crismans in state court.

**DISCUSSION**

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable

inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.      MOTIONS FOR SUMMARY JUDGMENT

The Crismans move for partial summary judgment, arguing that Chicago Title owes the Crismans a duty to defend them in their state court litigation over their access to the Property. Chicago Title opposes the Crismans' motion and seeks summary judgment in its favor, on the grounds that it is undisputed that the Crismans possessed legal access to their land as of the date of the Policy, and therefore, the Crismans' claims fail as a matter of law.[3]

### A.      Duty to Defend Standard

"It is axiomatic that the duty to defend is broader than the duty to indemnify." *Wooddale Builders, Inc. v. Maryland Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006). The Minnesota Supreme Court has "consistently held that an insurer's duty to defend arises when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." *Franklin v. Western Nat. Mut. Ins. Co.*, 574 N.W.2d 405, 406–07 (Minn. 1998). Moreover, "the duty to defend one claim creates a duty to defend all claims; and . . . the duty to defend exists regardless of the merits of the underlying claims." *Wooddale*, 772 N.W.2d at 302. "In determining the existence of such a duty, a court will

---

[3] Chicago Title never engages with the issue of whether the Crismans' state court litigation is related to their right of access to the Property. Chicago Title relies exclusively on proving here that the Crismans did possess such right of access.

compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997).

"An insurer seeking to escape the duty to defend bears the burden of establishing that all parts of a cause of action clearly fall outside the scope of coverage." *Franklin*, 574 N.W.2d at 407.  "Any ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy.  If the claim is not clearly outside coverage, the insurer has a duty to defend." *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 390 (Minn. 1979).  "An insurer who wishes to escape [the] duty [to defend] has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165–66 (Minn. 1986).

### B.   Analysis

The relevant policy language here is clear, and the parties do not dispute its meaning.  The Crismans' Policy guarantees the following:

> Chicago Title Insurance Company . . . insures, as of Date of Policy . . . against loss or damage . . . sustained or incurred by the Insured by reason of: . . . No right of access to and from the land.

(Crisman Aff., Ex. A at 13.)  Thus, the core question is whether the underlying state court litigation is "arguably within the scope of the protection afforded by" this policy language. *See Franklin*, 574 N.W.2d at 406–07.

### 1.      The Crismans' Right of Access

The sole argument Chicago Title offers in support of its motion for summary judgment and in opposition to the Crismans' motion is that it can prove as a matter of law that the Crismans possessed legal right of access to the Property as of the date of the Policy.  The parties therefore agree that the threshold issue for the Court to decide is whether Plaintiffs possessed legal access to the Property as of October 2, 2013.

"An abutting landowner has, in addition to the public right of travel, the separate and distinct right of access to his [or her] property."  *Underwood v. Town Bd. of Empire*, 14 N.W.2d 459, 461 (Minn. 1944).  "Minnesota law treats the right of access—ingress and egress—as a distinct property right."  *State by Comm'r of Transp. v. Elbert*, 942 N.W.2d 182, 189–90 (Minn. 2020).  "Specifically, property owners have a right of 'reasonably convenient and suitable access' to a highway that abuts their property."  *Id.* at 190.  "What is reasonable access is typically a fact question."  *Id.*

Chicago Title argues that two different roads provided the Crismans with a right of access as of October 2, 2013: Hornet Street and Hilman Drive.

Chicago Title argues that Hornet Street, the stretch of road that has been at the center of the Crismans' dispute with Hillman Township from the outset of this saga, provided the Crismans with an undisputed right of access to the Property from the time it was purchased.  Chicago Title offers two primary arguments in support of this contention.  First, because Hillman Township admitted in its briefing at the Minnesota

Court of Appeals that the "northern quarter mile of Hornet Street is a town road[.]" Appellate Brief, *Hillman Township v. Crisman*, No. A22-0123, 2022 WL 1811180, at *5 (Minn. App. Apr. 13, 2022).  Second, because Hillman Township's "40-Year Resolution," which was passed as an attempt by Hillman Township to disclaim any obligation to maintain Hornet Street, cannot give rise to any insurance claims by the Crismans because it arose eight years after the Policy took effect.

Chicago Title also argues that a different stretch of road, Hillman Drive, provided the Crismans with a right of access as of the date of the Policy.  Chicago Title states that an official Kanabec County plat records Hillman Drive as "dedicate[d] to the public for public use forever," and that Hillman Drive abuts the Property.  (*See* Decl. of Timothy M. Kelly ¶ 4, Ex. C, Aug. 29, 2025, Docket No. 30.)  Chicago Title also relies on a Declaration from Richard Martens, "supervisor on the Hillman Town Board," filed in one of the underlying state court matters.  (*Id.* ¶ 6, Ex. E ("Martens Decl.").)  Martens states that "Hornet Street is not the only public access to [the Property]," and that:

> A four-rod (66 feet) platted and maintained road (297th Avenue) extends in the Raspberry Acres plat to the eastern boundary of [the Property] and provides unfettered access to their property.

(*Id.* at 16.)  Chicago Title argues that although Hillman Drive "may not be [the Crismans'] preferred right of access location," the Crismans, "as of the Date of Policy, had a right of access . . . via 297th Avenue f/k/a Hillman Drive."  (Defs.' Mem. Supp. Summ. J. at 9.)

The Crismans respond that, at minimum, factual disputes remain as to whether either road provided them with legal or actual access to the Property. As to Hornet Street, the Crismans contend that whether Hornet Street provided a right of access is far from a resolved question, and that this dispute, contrary to Chicago Title's argument, long predates Hillman Township's "40-Year Resolution." And as to Hillman Drive, the Crismans dispute whether "the mere fact that Kanabec County recorded the plat" means that legal access existed; the Crismans attest that the area between the Property and the end of Hillman Drive was "completely abandoned, wooded and blocked until the Township entered and cleared it in July 2021." (Crisman Aff. ¶ 8.) They state that they have never possessed legal access to the Property through Hillman Drive, and that such access is at best "hypothetical." The Crismans also contend that as of October 2, 2013, the date of the Policy, Hillman Township had already abandoned Hillman Drive pursuant to a Minnesota Statute that provides that only a town board can authorize maintenance on "town roads or town cartways . . . upon which no maintenance or construction has been conducted for 25 years or more." *See* Minn. Stat. § 365.10, subd. 11.

The Court concludes that factual disputes remain as to whether the Crismans possessed a legal right of access to the property as of October 2, 2013. While further discovery and litigation may bear out that either Hornet Street or Hillman Drive did provide the Crismans with a legal right of access, Chicago Title has not proved as much as a matter of law. The parties have presented numerous facts relating to the legal and

physical status of the two roads at the time the Policy took effect—some facts are consistent with the position that the Crismans' right of access was intact in 2013, but others not. The Court cannot conclude on this record that the Crismans' right of access to their land was unimpeded as a matter of law as of the date of the Policy. The Court will therefore deny Chicago Title's motion for summary judgment.

### 2.    Chicago Title's Duty to Defend

Having concluded that genuine disputes remain as to whether the Crismans possessed a right of access to the Property as of the date of the Policy, the Court turns to whether Chicago Title breached its contract with the Crismans in denying their claim for costs associated with the underlying state court litigation. Whether Chicago Title breached its contract turns on whether Chicago Title owes a duty to defend the Crismans in litigation over the legal status of Hornet Street.

In Minnesota, "an insurer's duty to defend arises when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." *Franklin*, 574 N.W.2d at 406–07. "[T]he burden is on the insurer to prove that the claim clearly falls **outside** the coverage afforded by the policy." *Prahm*, 277 N.W.2d at 390 (emphasis added). Chicago Title failed to meet that burden. In opposition to the Crismans' motion for summary judgment, Chicago Title focused only on proving, as a matter of law, that the Crismans possessed a right of access to the Property as of the date of the Policy. The Court has rejected that argument, finding that factual disputes remain

-12-

as to the Crismans' right of access.  But importantly, Chicago Title did not present any

alternative argument regarding its duty to defend.  Chicago Title did not argue that the

Crismans' state court litigation is not "arguably within the scope" of the Policy, and in fact,

did not discuss the applicable "arguably within the scope" standard at all in its briefing.

Accordingly, the Court will grant the Crismans' motion for partial summary

judgment and hold that Chicago Title owes the Crismans a duty to defend in the

underlying state court litigation because that litigation is arguably within the scope of the

protection afforded by the Policy.  The extent of damages stemming from Chicago Title's

breach was not part of the Crismans' motion for summary judgment and must be the

subject of further litigation.

### CONCLUSION

"If any part of a cause of action is arguably within the scope of coverage, the insurer

must defend."  *Prahm*, 277 N.W.2d at 390.  Because Chicago Title failed to demonstrate

that the Crismans' claim falls outside the coverage afforded by their title insurance policy,

the Court concludes that Chicago Title has a duty to defend the Crismans in the relevant

state court litigation.  The Court will deny Chicago Title's motion for summary judgment

and grant the Crismans' motion for partial summary judgment.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED that:**

1.  Plaintiffs' Motion for Partial Summary Judgment (Docket No. [20]) is **GRANTED** as follows:

    a.  Defendant is under a duty to defend Plaintiffs in the underlying state court litigation relating to the access rights, ownership, and maintenance of Hornet Street.

    b.  Issues of fact remain regarding the extent of Defendants' liability for breach of contract.

2.  Defendant's Motion for Summary Judgment (Docket No. [27]) is **DENIED**.


DATED: March 17, 2026                           _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                        United States District Judge